535 A.2d 284

Allan R. Case and Emma Case t/d/b/a Case Farm Hatchery, Petitioner *v.* Commonwealth of Pennsylvania, Department of Agriculture, Bureau of Animal Industry, Max A. Van Buskirk, Jr., V.M.D. Director, Respondent.

Argued November 19, 1987, before Judges CRAIG and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Lewis H. Markowitz, Markowitz & Markowitz;* Of Counsel: *John W. Thompson, Jr.,* for petitioner.

*Thomas B. York,* Deputy Attorney General, with him, *Andrew S. Gordon,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE PALLADINO, December 31, 1987:
Allan R. and Emma Case, t/d/b/a Case Farm Hatchery, (Petitioners) filed a petition for review with this court asking that it be considered a complaint in the nature of a mandamus action against the Department of Agriculture in our original jurisdiction, or alternatively, as an appeal of a decision of the Department in our appellate jurisdiction. The Department has filed preliminary objections directed against the complaint in our original jurisdiction and a motion to quash the petition for review in our appellate jurisdiction. The petition, preliminary objections and motion to quash are all before us for disposition.

The underlying undisputed facts are as follows. On May 1, 1986, the Department quarantined Petitioners' poultry, eggs, poultry products and equipment to

prevent the spread of a suspected infection of pullorum in Petitioners' flock. Subsequent blood tests on Petitioners' fowl showed that approximately 15% of the birds were infected with the bacterium Salmonella pullorum. In a letter dated May 15, 1986, Max A. Van Buskirk, Jr., the Director of the Bureau of Animal Industry of the Department, informed Petitioners that:

Both state and federal laws prohibit the movement of fowl infected or exposed to Pullorum disease except directly to slaughter. The quarantine imposed on your operation on May 1, 1986 therefore prohibits the movement of any live poultry or fertile eggs or other contaminated articles from your farm except by permit of the Department.

Permits will be granted only to move poultry directly to slaughter processing facilities and to move sanitized non-fertile eggs for table use.

. . .

Inasmuch as the Department has not condemned your Pullorum infected birds they are not eligible for indemnity payments from the Department.

If you plan to continue breeding poultry and you plan to resume sale of live poultry and fertile eggs to other poultrymen, it appears imperative that you depopulate your infected flocks as soon as possible. Depopulation may be accomplished by slaughtering these flocks for meat purposes or by euthanatizing and disposal by burial, rendering or incineration.

By letter dated October 8, 1986, the Department informed Petitioners that the quarantine placed on their premises was released.

Petitioners consulted an attorney, who, on December 5, 1986, wrote a letter to Van Buskirk suggesting

that the Department had in actuality condemned Petitioners' fowl pursuant to section 1 of the Act of June 22, 1931 (Act), *as amended,* 3 P.S. §398[1] and therefore Petitioners were entitled to compensation pursuant to section 2.1 of the Act, 3 P.S. §399.1.[2] The Department, via its legal counsel, responded in a letter dated December 22, 1986 that since it had not ordered Petitioners' birds slaughtered, there had been no condemnation, and consequently, there was no entitlement to compensation. Petitioners' counsel, in letter dated February 13, 1987, requested a form on which to file a claim for compensation or alternatively, acknowledgment from the Department that it had received from Petitioners, prior to their representation by counsel, a detailed inventory containing the current value of the diseased birds. The Department's legal counsel responded to this request, by letter dated February 18, 1987, indicating again that the animals were not condemned and therefore Peti-

---

[1] Section 1 of the Act states:

The word "salvage," as used in this act, means the net proceeds an owner of a domestic animal, at the time of appraisal and condemnation, realizes from the sale of the live animal, or the carcass, hide and offal.

The word "condemned," as used in this act, means that a domestic animal has been adjudged, by an authorized officer or agent of the Department of Agriculture, to be diseased and ordered to be slaughtered to prevent the spread of disease.

The phrase "domestic animal" or "animal," as used in this act, includes a bird or fowl unless the context clearly indicates otherwise.

[2] Section 2.1 of the Act states:

The Commonwealth hereby agrees to compensate owners of birds or fowl condemned to prevent the spread of disease at a rate not to exceed ninety percent of the appraisal value or six dollars ($6) whichever is less for each bird or fowl condemned because of pullorum disease.

tioners did not have a claim subject to the appraisement procedures in 7 Pa. Code §§8.11-8.13.[3]

Petitioners filed their complaint with this court in May, 1987. In their mandamus action, Petitioners request that we order Van Buskirk to furnish them with the appropriate forms for appraisal and to conduct an appraisal pursuant to 7 Pa. Code §8.11-8.13 or to compensate them as provided by section 2.1 of the Act. If their petition for review is determined to be in our appellate jurisdiction, Petitioners request that we remand the case to the Department either for a hearing and adjudication in accord with section 504 of the Administrative Agency Law, 2 Pa. C. S. §504 and the Department's own regulations at 7 Pa. Code §§131.1-131.36 or for a hearing solely to determine the amount of compensation due pursuant to section 2.1 of the Act.

The Department's preliminary objections to the complaint in our original jurisdiction raise the issues of (1) jurisdiction, (2) failure to state a cause of action, and (3) unavailability of mandamus. The essence of Petitioners' complaint is that they are entitled to compensation for their diseased fowl because the Department, in actuality, had condemned their birds. They are in effect asking us to reverse a decision of the Department that the diseased birds had not been condemned, which is an appeal. We conclude that this complaint does not fall within our original jurisdiction.

That brings us to the Department's motion to quash, which is premised on the alleged untimeliness of Petitioners' appeal. The Department contends that its letter of May 15, 1986 was a final adjudication of Petitioners' right to compensation for the diseased fowl

---

[3] These sections detail the procedure to be used in determining the amount of compensation the owners of fowl who have contracted pullorum disease are entitled to pursuant to section 2.1 of the Act.

and that Petitioners' petition for review filed in May, 1987 was not filed within the 30 day requirement of Pa. R. A. P. §1512. The Department argues that even if the February 18, 1987 letter is considered the final adjudication, Petitioners' appeal is still untimely and must be quashed.

Petitioners rely on this court's decision in *Brooks v. Department of Agriculture,* 105 Pa. Commonwealth Ct. 196, 523 A.2d 845 (1987), in support of the timeliness of their appeal. In *Brooks,* this court stated:

> Our Supreme Court in Callahan v. Pennsylvania State Police, 494 Pa. 461, 431 A.2d 946 (1981), *rev'g* 39 Pa. Commonwealth Ct. 609, 396 A.2d 81 (1979), held that a decision which does not comply with the procedures of the Administrative Agency Law is an invalid adjudication and the date on which it was issued has no legal significance when measuring the time in which an appeal must be taken. Petitioner's appeal is, therefore, not time barred.

*Id.* at 201, 523 A.2d at 847 (footnotes omitted). Petitioners contend that they, like the Brooks, were not accorded the procedures of section 504 of the Administrative Agency Act (Act), 2 Pa. C. S. §504.

Section 504 of the Act provides that "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." Our review of the materials filed in this case shows that Petitioners were summarily informed that they were not entitled to any compensation because, even though the Department had determined that their birds were diseased and their operation quarantined except for movement (by Department permit)[4] to a slaughter-

---

[4] Petitioners allege in their petition for review that after arranging for their diseased birds to be slaughtered for meat pur-

house, the Department had not "ordered" the diseased birds slaughtered. Petitioners were given no notice of a hearing nor were they afforded an opportunity to be heard even when they engaged counsel who requested a meeting to discuss compensation.[5] As we held in *Brooks*, the date of a decision reached without compliance with the Administrative Agency Law has no legal significance. Therefore, Petitioners' appeal is not time-barred.[6] However, for the reasons which follow, we find the materials submitted in this case insufficient for appellate review on the merits.

The Department has filed as a record in this case a series of letters, which detail its actions in respect to Petitioners' fowl, and the laboratory reports containing the results of the tests performed on Petitioners' birds. This material is nothing more than the contents of the Department's file. The file indicates that the Department informed Petitioners that if they intended to continue their operation in the future, it was "imperative that you [Petitioners] depopulate your infested flocks" and slaughtering was recommended as a means of performing this.[7] The file shows that an authorized agent of the Department adjudged specific fowl belonging to Petitioners to be diseased.[8] It also shows that the Depart-

---

poses, they made numerous requests to the Department for permits to move the fowl to the slaughterhouse but none were issued.

[5] Letter dated December 5, 1986 from Petitioners' counsel to Van Buskirk, file item 15.

[6] During oral argument, the Department argued that their decision in this was not an adjudication because Petitioners had no right to compensation. We disagree. Section 2.1 of the Act clearly entitles Petitioners to reimbursement if their pullorum infested birds were condemned.

[7] Letter dated May 15, 1986 from Van Buskirk to Petitioners, file item 8.

[8] File item 2.

ment quarantined Petitioners' entire operation to prevent spread of the disease[9] and would only allow movement of Petitioners' diseased fowl to slaughter-processing facilities.[10]

When these facts are viewed in light of the definition of condemnation in the Act, a close correlation is apparent. Section 1 of the Act provides that a bird is condemned when it has been "adjudged, by an authorized officer or agent of the Department of Agriculture, to be diseased and ordered to be slaughtered to prevent the spread of disease."[11] However, the Department is authorized by the Act of April 17, 1929, *as amended*, 3 P.S. §§341-351, to quarantine farms to prevent the spread of disease. We note that section 5 of the Act of April 7, 1929, 3 P.S. §345 specifically permits the Department to establish a special quarantine "to kill any animal . . . for the purpose of preventing . . . the spread of a dangerous transmissible disease."

The materials submitted in this case are insufficient for this court to make a determination on whether the Department erred in its decision that Petitioners' dis-

---

[9] Order of Special Quarantine, file item 1.

[10] Letter dated May 15, 1986 from Van Buskirk to Petitioners, file item 8.

[11] This court in *Maddux v. Department of Agriculture*, 35 Pa. Commonwealth Ct. 386, 386 A.2d 620 (1978), held that an allegation "that a named agent of the Department 'adjudged all the hatched and unhatched fowl and eggs to be diseased and informed the Plaintiff they would have to be destroyed and disposed of to prevent the spread of the disease'" was sufficient to establish that a condemnation occurred for the purposes of stating a cause of action for damages. *Id.* at 388, 386 A.2d at 621. That case is not dispositive of this case. *Maddux* dealt with the sufficiency of an allegation of condemnation in stating a cause of action for damages in our original jurisdiction. Here, we are dealing with an appeal of a determination that a condemnation had not occurred where no opportunity to be heard was given.

eased birds had not been condemned. In *Brooks,* 105 Pa. Commonwealth Ct. at 202, 523 A.2d at 848, we remanded to the Department because there was *"no record in this case nor a statement of agreed upon facts which would enable us to perform our appellate review function in addressing the merits. . . ."* (Emphasis in original.) Such is also the situation here. The materials submitted are insufficient to constitute a record and no stipulation of facts was submitted by the parties. Appellate review is not possible. Accordingly, we remand to the Department for a hearing in accordance with this opinion.

ORDER

AND NOW, December 31, 1987, the Department of Agriculture's preliminary objection to our original jurisdiction is sustained. The motion of the Department to quash the appeal is denied and the case is remanded to the Department for a hearing in accordance with the foregoing opinion.

Jurisdiction relinquished.