574 A.2d 1179

**Allan R. CASE and Emma Case t/d/b/a Case Farm Hatchery, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF AGRICULTURE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 2, 1990.

Decided May 4, 1990.

Reargument Denied June 11, 1990.

64

Lewis H. Markowitz, Markowitz & Markowitz, P.C.; John W. Thompson, Jr., York, of counsel, for petitioners.

Stephen R. Pelcher, York, for respondent.

Before DOYLE and PALLADINO, JJ., and NARICK, Senior Judge.

PALLADINO, Judge.

Allan R. Case and Emma Case t/d/b/a Case Farm Hatchery (Appellants) appeal from an order of the Secretary of Agriculture (Secretary), which denied Appellants' claim for compensation for a poultry flock, which was destroyed because it was infected with pullorum disease (pullorum). We affirm.

■ Appellants were notified by the Bureau of Animal Industry of the Department (Bureau) of its suspicion that Appellants' flock was infected with pullorum. On May 1, 1986, Bureau issued an order of special quarantine[1] to contain the flock pending the outcome of tests for pullorum. On May 6, 1986, Dr. Max A. Van Buskirk, Jr., Bureau Director (Director) met with Appellants and advised them that their flock tested positive for pullorum. After failing

1. A special quarantine is an order of quarantine covering a single premises, or a single animal, or any number of animals when confined or contained in or on the same premises. Section 1 of the Act of April 17, 1929, P.L. 533, 3 P.S. § 341.

in an attempt to sell the flock to a private slaughtering facility in New Jersey, Appellants destroyed and buried the flock.

Thereafter, Bureau lifted the quarantine, after which, Appellants sought compensation for the destroyed flock from the Department pursuant to Section 2 of the Act of June 22, 1931 (Act), P.L. 682, *as amended*, 3 P.S. § 399, which provides, in pertinent part, "The Commonwealth hereby agrees to compensate owners of domestic animals *condemned* to prevent the spread of disease." (Emphasis added.) The Department, in a letter dated December 22, 1986, stated that because Director had not ordered the destruction of the flock, the flock had not been condemned and Appellants were not entitled to compensation. Appellant thereafter applied for compensation which the Department denied.

Appellants filed an action in this court praying for mandamus relief, or alternatively, as an appeal of a decision of the Department.[2] We held that Appellants' action was properly an appeal, and that the Department file, which was submitted as the record, was insufficient for appellate review. Accordingly, the case was remanded to the Department.[3]

Following remand, a hearing was conducted before an examiner, who issued a proposed conclusion that Appellants were entitled to compensation. Secretary issued a final adjudication, making the following pertinent findings of fact and conclusions of law:

## FINDINGS OF FACT

. . . .

7. On May 6, 1986[,] [Director] and [Appellants] met again. At this meeting, [Appellants] were given options to remove the quarantine. These included (1) destroy the flock by June 1, 1986 and receive an indemnity payment

2. *Case v. Department of Agriculture,* 112 Pa. Commonwealth Ct. 256, 535 A.2d 284 (1987) (*Case I*).

3. *Case I.*

from the Department equal to one-third of the appraised value of the flock; (2) transport the birds for slaughter upon the issuance of permits by the Department; and (3) test the flock and remove birds that tested positive for pullorum disease on two successive occasions at least 21 days apart.

8. Prior to June 1, 1986, the flocks infected with pullorum were destroyed by gassing, because permits could not be obtained from the state of New Jersey to ship the flocks for slaughter to a New Jersey processing plant.

. . . .

## CONCLUSIONS OF LAW

. . . .

2. There was no "condemnation" within the meaning of [Section 398 of the Act.]

3. The Department is not estopped from denying compensation to [Appellants] as [Appellants] were not justified in believing that the Department had ordered the slaughter of their flocks.

Secretary issued an order denying Appellants' claim for compensation.

■ On appeal to this court,[4] Appellants raise two issues: (1) whether Appellants' flock was subject to a compensable *de facto* taking; and (2) whether the Department is estopped from denying the claim for compensation because Appellants destroyed their flock in reliance on Director's offer of compensation.

As to the first issue, Appellants contend that because section 399 of the Act does not provide a procedure for securing compensation, the general rules for condemnation under the Eminent Domain Code[5] control the present case.

---

**4.** Our scope of review of administrative agency decisions is limited to a determination of whether an error of law has been committed, whether constitutional rights have been violated and whether findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

**5.** Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101—1–903.

Appellants argue that they were not informed prior to the destruction of their flock that the quarantine could be lifted by continued testing and removal of infected birds. Appellants assert further that their application for a permit to transport the flock to New Jersey for slaughter was denied because of New Jersey's refusal to authorize the transportation and destruction of the flock in that state. Appellants contend that because their flock was quarantined and could not be disinfected or slaughtered, the quarantine substantially deprived them of the beneficial use and enjoyment of the flock. Appellants argue that because the Director issued the quarantine for a public purpose, their flock had been subject to a *de facto* taking, which is compensable under the Eminent Domain Code.

Appellants assert that the *de facto* taking occurred contrary to the Director's statement in a letter to them dated May 15, 1986, that the flock was not condemned and that they were not eligible for compensation. The last paragraph of this letter advises Appellants as follows:

If you plan to continue breeding poultry and you plan to resume sale of live poultry and fertile eggs to other poultrymen, it appears imperative that you depopulate your infected flock as soon as possible. Depopulation may be accomplished by slaughtering these flocks for meat purposes or by euthanatizing and disposal by burial, rendering or incineration.

The Department argues that the issuance of an order of quarantine is not a *de facto* taking. The Department contends that on May 6, 1986 and in the letter of May 15, 1986, Director advised Appellants of their possible options but that ultimately Appellants would have to choose which option to pursue. The Department contends that because Director never ordered Appellants to destroy the flock, Appellants are not entitled to compensation.

Under section 345 of the Act, the Department may establish a special quarantine "whenever it is deemed necessary or advisable by [a Department] officer or agent, to examine or test or treat or control or kill any animal." This

section provides the Department with the discretion to determine when it is necessary to destroy animals to prevent the spread of disease. While the public interest may be served by an order to specially quarantine infected animals, it does not automatically follow that an order to destroy the infected animals is necessary to prevent the spread of disease.

■ Chapter 8 of Title 7 of the Pa.Code [6] provides the procedure for appraisal and indemnification for the destruction of poultry infected with pullorum. Consistent with section 399, the procedure stated in chapter 8 requires that "Indemnity shall be available ... for poultry flocks specifically adjudged and ordered *condemned* by the Director only as absolutely necessary to promote the eradication of pullorum disease." [7] The procedure provided in chapter 8 and section 399 clearly require that the flock be condemned for its destruction to be compensable.

■ The word "condemned" as used in chapter 8 and the Act, means that a domestic animal has been adjudged, by an authorized officer or agent of the [Department], to be diseased and ordered to be slaughtered to prevent the spread of disease.[8] We conclude that because the Director did not order the destruction of Appellants' flock, Appellants are not entitled to compensation under the Act.

As to the second issue, Appellants argue that Director induced them to destroy the flock upon the belief that the destruction of the flock was their only course of action. Appellants assert that because they relied on Director's advice, the Department is estopped from denying compensation.

■ At the hearing, Mr. Case testified as to the May 6, 1986 meeting as follows:

6. 7 Pa.Code §§ 8.1–8.30.
7. 7 Pa.Code § 8.30(b).
8. 3 P.S. § 398. It is not disputed that the flock had been adjudged to be diseased.

Q [Department's counsel]. Yes. I'm under the impression that. you believed the Department was offering you $23,000 to turn over your flock or do whatever, but on the other hand, you said, I'll go get them slaughtered, maybe I can get more.

A [Mr. Case]. Right.

. . . .

A. [L]ike I say, when I left the office and whichever meeting, the second meeting I had with [Director], that it was either one way or the other, I had to make my mind up. I said, I'll sell them. I'll be way ahead of the game. In other words—

Q. But then after you couldn't sell them, did you believe that you could still go back and get the $23,000.

A. No, no, because he said I made my mind up to sell them.

Notes of testimony at 40–42. Regardless of whether Appellants destroyed the flock in reliance on Director's advice, Mr. Case testified that, after the May 6, 1986 meeting and prior to the destruction of the flock, they believed that the offer of compensation was no longer available.

Accordingly, we affirm.

DOYLE, J., dissents.

### ORDER

AND NOW, May 4, 1990, the order of the Secretary of Agriculture in the above-captioned matter is affirmed.

DOYLE, J., dissents.